The next case on the calendar has been submitted, so the next case for argument is United States v. Marquez, and counsel are here in person. Good morning, Ms. Daly. Good morning, Your Honor. When you're ready, please go ahead. Thank you. May it please the Court, Elizabeth Daly appearing on behalf of the defendant, Oscar Marquez. There are a number of assignments of error in this case. In the interest of time, I plan to focus on just three of those. And those three are the Feretta denial, the Speedy Trial Act violation, and the conceded error in doubling the statutory maximum sentence from five years to ten years. However, with any best laid plans, I'm happy to take direction from the Court if there are other issues that the Court would like me to comment on. Beginning with the District Court's denial of Mr. Marquez's request for self-representation under Feretta, there are two problems with that denial, both of which are clearly established on the record, both as a matter of fact and a matter of law. One is the adequacy of the colloquy itself, which was truncated because the Court never provided the required advice before making a determination that the waiver was unknowing or involuntary, if indeed that's what the Court decided. Is there any way on this record that the district judge could have granted Mr. Marquez's request to represent himself? I mean, I understand the three parts of the colloquy and your argument that although the district judge asked about understanding the elements and the consequences, the district judge then did not advise Mr. Marquez. But the third part is that he has to understand the risk of representing himself, and he was told those risks. You don't challenge that that advisement was inadequate, and he said no and didn't understand. So is there any way after that that this district judge could have allowed him to represent himself? Well, Your Honor, the question isn't whether he could have allowed him to represent himself on this colloquy. It's is this colloquy adequate? And in a very similar case of United States v. Fernandez — Isn't the error — the error would be improperly denying the request to represent himself, correct? The constitutional error is denying on a knowing or voluntary basis without having provided the required advice. But once he says enough that the judge can determine the record establishes he unequivocally said he doesn't understand, then I don't think there's any way this district judge could have granted his request to represent himself. That would have been error. I mean, so based on what happened here, how can we conclude that the denial was an error? It is the obligation on the court. So when we're challenging the colloquy, the analysis is very clear in Hernandez that it's not what did the defendant understand. When the challenge is to the colloquy, the question is what did the district court advise? Sure, but Hernandez was a little bit different because the district judge concluded that he didn't understand those elements, but it didn't tell him what they were. But here, he clearly didn't understand an element. He said that he didn't, and he had been advised of that element. So for the knowing and intelligent waiver of his right to counsel, he has to be unequivocal. He has to understand all three. So once one leg falls out, the stool collapses, right? How is there any way this district judge could have allowed him to waive his right to counsel? Well, Your Honor, it's not a quiz, right? Or if it is a quiz, it's supposed to be an open book test where the answers are provided. And so some of the answers are provided. He says he doesn't understand. And in an equivalent situation in Lopez-Osuna, that was deemed to be enough to understand. So if we had a full colloquy, we could look at the record as a whole. And I think on this record, you could find that he did understand because the fact that somebody says they don't understand is not determinative. And, in fact, Mr. Marquez is not the first person to have answered questions in this way who has later gone on to establish a full Faretto waiver. So I don't think we can say that there's no way that a valid Faretto waiver could have happened here. Mr. Marquez was constitutionally entitled to advice of the correct rights. And the bench book is very explicit about what those rights should be. Does it have to be in those words? Not at all. It can be in different words, but the advice is what's missing. I could also— At the arraignment, you're advised of the charge and the consequences, you know, the penalties. And although it doesn't seem to be in the record, or at least I didn't see it, we have to assume he was arraigned. So he was advised and at some point must have said he understood the charge against him. He was advised of the nature of the charges of the arraignment. He wasn't advised of the maximum penalties. And so that brings us really to the second question. And there are two sides of the same coin because before telling Mr. Marquez, do you understand that you are charged with cyberstalking, stalking, interstate violation of protection order? Do you understand that the maximum sentence for those crimes is five years on each count? Before asking him those things and providing him that advice, the colloquy is truncated. And yes, Mr. Marquez is providing nonresponsive answers. Some of his answers are somewhat nonsensical, as the courts see on a regular basis. But at that point, the court says, here is my reason for denying, and it is this. It is abundantly clear to me that there isn't a chance at all that Mr. Marquez could represent himself successfully. He doesn't say, it's abundantly clear to me that Mr. Marquez does not know the nature of his waiver. He doesn't say— I'm sorry to interrupt, counsel, but I'm not sure that that matters because as I understand your argument, there are two different kinds of error that could arise. One is the court not properly informing the defendant of the nature of the charges and the penalties and the risks of self-representation. That's reversible error under Hernandez. Another is if properly advised, the record indicates that the defendant does not have a knowing and intelligent understanding of those things, and yet the court grants the motion to self-represent. That's a different kind of error that could occur. It seems to me, if I understand correctly, under Hernandez, none of the three elements were properly discussed, and the court there found that was reversible error, without even going into whether the defendant understood independently those elements. Is that right? Well, Your Honor, I think you're drawing something from Hernandez that's not in the actual opinion itself. And I think a critical part of Hernandez is the footnote 12 that talks about what the court actually said in its ruling. It says, this person is uninformed about the charges, similar to what occurred here, that he was not told what the charges were, what the maximum penalties were. And then he says, and I have the quote here, pardon me, the judge says that he's not capable of defending himself. And that's similar to what we have here, where he says he can't represent himself successfully. And in footnote 12 of Hernandez, this court says, well, we're being generous by saying that this was a ruling that he wasn't knowing or voluntary. It also could have easily been interpreted as saying he doesn't have the legal skills required to represent himself. If that's what the court's saying, if we're taking the judge at his words, that's not a valid basis. And I don't think we would then question, well, does the record as a whole show a knowing and voluntary waiver? You have an incorrect ruling. He hasn't had the opportunity to have a full colloquy to demonstrate a valid waiver. This is his constitutional right of self-representation. So to cut off the colloquy, in my view, because the district court misunderstood the requirements for a valid waiver and was not making that decision based on can he understand these rights if I explain them to him, can he understand the nature of the case if I explain it to him, but instead saying this person is nonresponsive to my statements, this person is not willing to, on the record, engage with me, instead saying that means he can't be successful in representing himself instead of that means he doesn't know what he's doing or he's uninformed, that's a legal error. Wouldn't it be a permissible inference that this defendant is going to, if he represented himself, he would continue to assert his alternative reality that the court has no jurisdiction over him, et cetera, and is the court required to indulge that fantasy in deference to maybe an omission of some sort in the colloquy? I like your phrasing, indulge that fantasy. This is his right to challenge the court's jurisdiction in this way. He did proceed to trial. He did testify on his own behalf without being disruptive. And what I think is critical is the court allowed him to proceed pro se to sentencing based on the same record. And maybe the court understood at trial that, yes, he does understand what's happening. He is engaging with this content in an appropriate way, you know, ill-founded as it may be. He has that capacity. He has that information that he needs to proceed pro se. Same record, and the court allows him to proceed pro se. He then goes on to represent himself at sentencing competently, raising issues that were not noticed by the parties and that are now conceded here on appeal. Well, so the issue with him representing himself on sentencing seems to me to sort of just be a red herring because there was some colloquy the judge decided that he could represent himself at sentencing, but you haven't challenged that. So that's not before us. We don't know if it was error. There's not even an argument that it was.  Well, our case line says that the court has to analyze the waiver with, quote, great care, indulging every presumption against the waiver, and that the analysis must be pragmatic, and that's in Erskine. So here the district court had to be pragmatic, had to apply the analysis with every presumption against waiver, and he unequivocally stated he did not understand the risk of representing himself after he had been adequately advised. You don't challenge that that portion of the colloquy was adequate. So at that point, I am having a hard time seeing how this could ever meet the standard of being knowing and intelligent. How could the district court ever make that finding without erring on that side and being reversed for letting Mr. Marquez represent himself when he didn't have a knowing and voluntary waiver? Your Honor, we can't prove that it was knowing and voluntary on this record because there was a cutoff colloquy. Erskine and the presumption against waiver is in the context of where somebody was allowed to waive their rights. There is no case law that says that is the same presumption on appeal after a denial. He also has a constitutional right of self-representation. The purpose, the reason we impose this obligation is to protect that right of self-representation so that the colloquy is not truncated. Right. And the case law talks about the tension between the rights to counsel and the right to represent yourself and the balancing at the court is the position of court has come out with the conclusion that if somebody is going to represent themselves, it has to be knowing and voluntary. And at the point where he said he didn't understand the risk, unless you're suggesting that the district judge was required to ask him that repeatedly, it seems to me it was over. He couldn't represent himself. He wasn't knowing and voluntary at that point. I mean, was the district judge required to say more to try to get him to say he understands the risk of representing himself? I believe under Hernandez more advice was required. I am very worried about making sure that I at least briefly address the Speedy Trial Act and sentencing issues because I don't want to not have an opportunity if those issues are addressed by the government on rebuttal. Can I, one more question on Ferreta. Are you aware of any authority in which a court does not adequately inform the defendant on one or two or more of the elements and yet a court of review decides that there's no error, reversible error? I'm not aware of any. And that's the comment I was making about Hernandez is they don't parse it out. Well, you were told about this one. You don't meet this prong. And, you know, we have Miranda as an analogy. And you don't get to the point of saying that somebody gave up their right to remain silent. That doesn't come in unless you have first given them all of the Miranda warnings, not just some of them. And it's different. It's in some ways the converse of what we're talking about here. But we don't parse it out. We look at the colloquy. If the colloquy is truncated, if it's not finished, then that knowing involuntary conclusion, which this judge never made, there's no ruling that it's involuntary, then that's premature and it's error. On the Speedy Trial Act, I think what I'd like to do in the remaining time is just to point out that the simplest path here to a finding of a violation is that last period of time that is disputed between the parties between September 22nd to November 10th. It's 49 days. It reaches 89 when it's added to the undisputed point. Overview, we have 438 days from arraignment to trial, six times the amount the Speedy Trial Act allows, only one delay attributable to the defendant, and three motions to continue filed by the government, two of which were even before the pandemic came into play. I think United States v. Lloyd is the best articulation of the burden on the district court to conduct an appropriate inquiry to make specific factual findings and then only determine based on those findings whether there's reasons for a continuance that outweigh the best interests of the public and the defendant. Here, the standing order only gets us past June 1st, and the unavailability of an essential witness, those are the two facts that the district court cited, only gets us to September 21st. The standing order pushes trials that were scheduled before June 1st to after June 1st. It doesn't say anything about whether time would be restricted under the Speedy Trial Act. That's the difficulty that I have with that argument you're making. Yeah, and so that's where the burden falls on both the court and the government to ensure that there's findings about why do we have a delay in September, October, November, or even, for that matter, July and August. That's why the government's motion to continue said standing order gets us past June, unavailability of a witness gets us into July, August, September, and then the only reference to October is something about the court's calendar, which they don't pursue on appeal. But as I understand it, you're not challenging the standing order itself. So the underlying circumstances in the midst of COVID, the difficulty with courtrooms and what people could do or not do to conduct trials, why aren't those reasonable grounds for interests of justice to push it out to the November trial? Two responses. One's very factual, and one's like, well, where's the end line? What if this was pushed out to 2023? It's a specific factual finding for why this delay. And if you look at cases like Lloyd and Nance, they don't say some general length of delay is authorized. A little bit different, we don't have a lot of case law about pandemic. Olson does say that it's a very factual determination, and there's nothing about what would be unsafe after June 1st. That order about June 1st is only signed in April, and so really we don't have any indication that it would be unsafe after June 1st. And then the factual response is, as we attach to our reply brief, the amended order 2020-12, which says jury trials can be conducted safely after July 15th. And so the factual finding that you would have needed to justify this continuance would need to be something about jury trials can't be safely held past June 1st. Or jury trials can't be safely held in September, October, November. And that's not at all what we have. All right, thank you. Thank you. And the clock's going up, so we took you over time, but you had asked for three minutes. We'll save you a couple minutes. Thank you. Good morning. May it please the Court, I'm Hannah Horsley on behalf of the United States. I do want to begin with addressing, going back to the Feretta issue, if I may, and answer some of the Court's questions. I agree with Judge Beatty that the issue before this Court is whether the district court erred in denying his request for self-representation. And on this record, there is no error. There is no way the Court could have authorized self-representation when the defendant made it clear repeatedly that he did not understand those three critical Feretta factors. I think the challenge here, and really the question for the Court, is what the limits are on what a court has to do faced with a defendant like this. And there is no clear script required. As Judge Beatty referenced, it's a pragmatic determination by the district court. And the reason there's no clear script is because the district court really is in the best position to ascertain what is going on with the defendant. So if you're presented with a defendant who's saying, I don't understand, to any of the questions, if it were left at that, and the district court had any reason to believe the defendant genuinely didn't understand that there was a problem with his ignorance, with his knowledge of the law, with any genuine misunderstanding, then it would be reasonable for a district court judge to pursue that, to provide more information, to answer any questions the defendant may have. This was a situation where the defendant was clearly recalcitrant. He was refusing to engage in any colloquy with the district court. The Court did conduct a colloquy. He did go through all three of those Feretta factors. And at each turn, the defendant is saying things like, Counsel, are you arguing that the court adequately explained the notice of the charges against him and the possible penalties? I agree that was done in the arraignment. And at that point, he had been arraigned twice, on both the original indictment and the superseding indictment. What precedent would you cite for the proposition that because someone was arraigned in the context of a Feretta motion, that suffices to inform the defendant of the elements that have to be informed? Well, I think the issue is the court has to ascertain that he understands the nature of the offense and the elements, not that he has to provide that information directly during the Feretta hearing. Here, on the record, it's... I'm sorry to interrupt, but I think I disagree with that, because under Hernandez and other case law, our authorities talk about that the court has to ensure that the defendant is made aware of the nature of the charges against him, the possible penalties and the dangers and disadvantages of self-representation in the context of determining whether he or she is going to make an informed waiver. Not that it's brought up in hearings past, but in that context, those things have to be informed before the defendant makes that informed choice. And here, if the defendant had made that choice and you were reviewing whether there was a knowing and intelligent waiver and that he fully understood the nature of the charges and the penalties, that would be relevant. But where there's no script required for how the district court conducts the Feretta hearing, there's nothing that tells the court it has to do things in a certain order. He was making a sincere inquiry into all of the three factors he had to consider, and the defendant made it abundantly clear that he was not going to engage in the colloquy, he was not going to answer the court's questions, and effectively there was no basis for which the court should continue to belabor the matter. How is this different than Hernandez, though? Because in Hernandez, the court also asked the defendant, do you know what the charges you're facing are? You know, it was more of a pop quiz, as counsel mentioned, in Hernandez. It didn't explain the nature of the charges or the penalties or the risks of self-representation, and the court there found that it was reversible error for the court not to have explained those things itself. How is that any different than what happened here? Well, I think in this situation the defendant's made it clear he's not going to engage in the colloquy and has foreclosed further questioning under all those factors. The defense in its brief really relies on Walthall as a comparison for this court to consider because that did involve a similar defendant who was expressing a lot of questions and concerns about the district court's authority and jurisdiction. The difference in that case is there was no foretta colloquy at all. The foretta hearing was combined with a competency hearing, and after the court heard evidence and assessed the competency factors, he found that the defendant was competent but denied the request for self-representation without doing any foretta colloquy. Here we have a district court doing a foretta colloquy, addressing all three factors, getting answers, indicating the defendant doesn't understand and is refusing to further engage in the colloquy, and I think on that record it was reasonable for the district court and not erroneous for him to end the inquiry. I'm fine. There was no basis at that point for a valid waiver, and of course this court can affirm on this record. Can I ask a follow-up question that I ask counsel? Are you aware of any case in which the court did not properly inform on one or two or all three of the elements, the foretta elements, but a court of review found that was not reversible error? No. Okay. I'd like to turn to the speedy trial issues unless there are any other questions on foretta. I have one question. Is there any authority that says sort of the converse of what Judge Sanchez just suggested, that if the district judge does the colloquy and the defendant denies knowledge on something that he's been advised, so not a pop quiz, what are the risks of representing yourself? And he doesn't answer, but the district judge says, here are the risks of representing yourself, do you understand? In those circumstances, is there any case law that says it's okay for the district judge to allow the person to represent himself at that point? No, Your Honor, and it wouldn't be okay because there's clearly no record on which a court could find a knowing and intelligent waiver, which is the heart of this inquiry. So on these facts where there's no basis to believe the defendant is knowingly and intelligently waiving his right to counsel, the court would have erred if it had, in fact, allowed him to represent himself. I do want to just note for the record, too, that during the colloquy, the court did attempt to go into a bit more detail about the risks of self-representation. And this is on ER 54. Do you understand the risks of representing yourself? They include, of course, that trials can be complicated. It requires you to handle issues of evidence, to appropriately put on any evidence you wish to put on, although you're under no obligation to do so in a criminal case whatsoever. Are you aware of the risks that are involved in a person without a law degree representing themselves in court? And then the defendant replies, I do not understand. My answer to everything will be without prejudice as a reservation of my rights. So I do think the court did attempt to educate a member of you substantively what those risks of self-representation were. And again, the defendant continues to be recalcitrant, and the colloquy continues on to the next page. With respect to the speedy trial, and in particular that third period of time that the defendant is focused on today, I do think the district court's ends-of-justice finding was sufficient. It was based on the district court's standing order 2020-9. And as this Court's decision in Olson has found, that is an appropriate basis on which to make an ends-of-justice excludable time finding. I don't think the argument the defendant makes in its brief about general congestion somehow complicating that time period from September 22nd to November 10th is well-founded because the cases in this Court, and in particular the Gallardo case at 773 F. 2nd, 1496, makes clear that the problem under the Speedy Trial Act is if general congestion on the Court's calendar is the basis for the continuance and the excludable time ruling when a period of time is indirectly attributed to the Court's calendar, that itself is not a problem under the Speedy Trial Act. So here we have a situation where the Court had granted the continuance, made excludable time findings on the basis of both the standing order as well as the unavailability of a key government witness, and after making that determination in excludable time, then considered the Court's availability and the party's availability in determining what trial date to pick. And under those circumstances, there's no violation of the Speedy Trial Act. Ms. Horsley, if the basis were only the availability of the witness, I might have a little bit of trouble with that given that, as the record shows, that a witness became available in September. Is there something that would justify the Court's setting aside the standing order, or maybe the standing order is the answer, that period of time between September and November, given how much time had passed, is there anything else in the record that could support the Court's finding that that was appropriate to extend it from September to November? Yes, because in addition to the case agent being unavailable until approximately September 21st, it was also noted that he was the only person who had interviewed many of the witnesses and all of the victims, and once he was back, there would need to be time to be able to prepare those witnesses with him available, and also noted on the record that most of the witnesses were from out of town, so all of the victims and a number of the witnesses were not in Oregon, and with all of the travel restrictions related to COVID, there was difficulty bringing them in for trial as well. So it wasn't just the unavailability of the case agent. And of course, we do believe that the standing order itself under these circumstances is an independent basis for the delay. Unless the Court has any other questions, I'll submit the other issues on my briefs. Okay, thank you. Thank you. Ms. Daly. I want to start with a speedy trial in my time remaining. The standing order does not substitute for factual findings on the record. The standing order is what we look to to see what amount of delay is the court finding justified. And when we look at standing order 2020-9, it says you have to continue some trials because it's unsafe here right now. And there's no basis that trials are unsafe after June 1st. And so, yes, some continuance is warranted based on that standing order. It gives us some facts that we can use, but it doesn't give us facts about what's happening after June 1st. The reference to other witnesses needing to be brought in, that's something that, again, is discussed in April. They're saying these witnesses can't travel right now, and so we're not going to make them travel right now. It doesn't say can these witnesses travel in September, October, November. Not on the record at all, no basis for any factual finding for that. I want to respond to Judge Beatty's question about is there a case that says the Court can allow a waiver where the defendant says he doesn't understand. Sorry, Ms. Horsley is taller than me. The answer to that is yes. It's Lopez-Osuna. That is a case where the defendant had been given some notifications of what he was charged with at arraignment. As an aside, there's nothing on the record of any hearing where Mr. Marquez is advised of the possible penalties. What you're referring to is what the Court in Hernandez describes as a limited exception when the Court grants the motion, and that's when the record as a whole shows that the person understands. After a full colloquy. Right. All right. And so, all right, I understand your point. And I think my point is just that's why it's so important that judges be persistent, I would say. And we have a decision in the Julison case by our District Judge Simon where he, an even more obstreperous client than Mr. Marquez, is continuing to not just respond what he doesn't understand, but to interject and to provide nonsensical and totally off-basis responses. And over a period of time, additional warnings are provided. Do you understand that if you don't acknowledge these rights, if you don't tell me that you understand them, I have to deny your request for self-representation? That is the record that was provided in that case. The only reason self-representation was denied is because he never unequivocally asked to represent himself. And here, that problem doesn't appear on the record. There was an unequivocal request. I see that I am over time. I appreciate the court's generosity. Thank you. Thank you for your arguments, counsel. They were helpful in this case that's taken out of submission. And we will be in recess until tomorrow morning. All rise.
judges: BADE, SANCHEZ, Lefkow